STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, V. RICHARD J. BRUCKNER, RESPONDENT.

543 N.W.2d 451

Filed February 16, 1996.   No. S-94-628.

Judith A. Schweikart, of Kutak Rock, for relator.

Thomas J. Guilfoyle, of Frost, Meyers, Guilfoyle & Govier, for respondent.

CAPORALE, LANPHIER, CONNOLLY, and GERRARD, JJ., and FUHRMAN, D.J., and NORTON and WARREN, D. JJ., Retired.

PER CURIAM.

The Nebraska State Bar Association Disciplinary Review Board filed formal charges against attorney–respondent Richard J. Bruckner as a result of complained violations of Canon 9, DR 9–102, of the Code of Professional Responsibility. The record shows, and Bruckner has not taken exception to, the following facts: In March 1990, Gary J. Anthony engaged Bruckner to represent Anthony in two separate workers' compensation matters. While representing Anthony, Bruckner endorsed Anthony's name to five workers' compensation checks payable to Anthony and Bruckner. Bruckner cashed the five checks without depositing the funds into his law firm trust account. Bruckner expended the money received from the five checks on his own personal and business expenses.

Upon these facts, Anthony filed a complaint with the Nebraska Counsel for Discipline. The complaint was dismissed by the Counsel for Discipline, and this dismissal was affirmed on appeal to the Committee on Inquiry of the . Second Disciplinary District. The matter was then appealed to the Disciplinary Review Board, and the review board determined that there were reasonable grounds for discipline and filed a formal charge in this court. At this point, the matter was referred to a referee for hearing, who, after conducting a hearing on the merits, found that Bruckner had violated DR 9–102 and recommended that Bruckner be publicly reprimanded and placed on probation for 1 year. The relator filed a written exception to the recommendation, asking this court to impose a more severe sanction. Bruckner requests that this court accept the recommendation of the referee.

## SCOPE OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record, in which this court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, this court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of

the facts rather than another. *State ex rel. NSBA v. Woodard, ante* p. 40, 541 N.W.2d 53 (1995); *State ex rel. NSBA v. Ogborn,* 248 Neb. 767, 539 N.W.2d 628 (1995).

To determine what sanction is appropriate, each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances. *State ex rel. NSBA v. Gleason,* 248 Neb. 1003, 540 N.W.2d 359 (1995); *State ex rel. NSBA v. Veith,* 238 Neb. 239, 470 N.W.2d 549 (1991).

## FACTS

Bruckner, a sole practitioner in Douglas County, Nebraska, was hired in March 1990 to represent Anthony in two workers' compensation matters. Bruckner agreed to represent Anthony in these matters on a one–third contingency basis. In relation thereto, Bruckner and Anthony entered into a fee agreement entitled "Authority to Represent," which, among other things, granted Bruckner a power of attorney to execute legal documents and authorized Bruckner to deduct fees and costs from any proceeds received as a result of the representation. A settlement was reached in one of the workers' compensation cases, and Anthony was granted an award by the Workers' Compensation Court in the other, which award was to be paid in weekly installments of $245 for 53.75 weeks. In connection with these awards, Bruckner received six workers' compensation checks jointly payable to Anthony and Bruckner, one check in the amount of $3,951.85 and five separate checks in the amount of $245 each. The $3,951.85 check was received in late February or early March 1991; it was not deposited in a client trust account until early June 1991. The five checks in the amount of $245 were endorsed and cashed by Bruckner without the knowledge of Anthony and without first being deposited in a client trust account. Bruckner admitted that the proceeds from these checks were utilized by him for personal and business expenses. At an undetermined later date, Bruckner made accounting entries correspondent to the amount of the workers' compensation checks in his client trust account.

As possible justification for his conduct, Bruckner offered two explanations. The first explanation is that Bruckner, at all

times, maintained a balance of his personal funds in the client trust account sufficient to cover obligations to his clients, including Anthony. As a second justification, Bruckner claimed that he was entitled to the money as a fee for representation in the second workers' compensation case.

## ANALYSIS

Bruckner does not take exception to the referee's findings of fact or conclusions of law. DR 9–102 of the Code of Professional Responsibility is entitled "Preserving Identity of Funds and Property of a Client" and reads, in relevant parts, as follows:

(A) All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable bank . . . accounts . . . and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay account charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

(1) Promptly notify a client of the receipt of his or her funds, securities, or other properties.

(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

The evidence in this case revealed violations of DR 9–102 by Bruckner in negotiating for cash, checks payable to Anthony and Bruckner (DR 9–102(A)); in failing to notify Anthony of the receipt of funds (DR 9–102(B)(1)); and in failing to account to Anthony for funds received (DR 9–102(B)(3)). Bruckner's claim that he may have had personal funds in client trust account(s) sufficient to cover the checks at issue does not constitute compliance with the requirements of DR 9–102(A) that "[a]ll funds . . . shall be deposited" in an identifiable bank account. The intent of DR 9–102 is to provide a rule for lawyers in "*Preserving Identity of Funds.*" The use of personal funds to cover money potentially due to clients would significantly cloud the identity of funds and is no different than utilizing overdraft protection to cover obligations to clients, except that the lawyer would pay no interest or banking fees. The fact that Bruckner may have had personal funds or other clients' funds on deposit sufficient to cover the Anthony checks is not a defense to a violation of DR 9–102(A).

We have clearly defined misappropriation as " 'any unauthorized use . . . of clients' funds entrusted to [a lawyer], including not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom.' " *State ex rel. NSBA v. Veith*, 238 Neb. 239, 245, 470 N.W.2d 549, 554 (1991). Misappropriation caused by serious, inexcusable violation of a duty to oversee entrusted funds is deemed willful, even in the absence of improper intent or deliberate wrongdoing. *Id.*

We have consistently held that an attorney has a duty to keep separate and properly account for client trust funds entrusted to the attorney and to promptly pay over and deliver such funds to the client upon request. *State ex rel. NSBA v. Veith, supra.* See *State ex rel. NSBA v. Statmore*, 218 Neb. 138, 352 N.W.2d 875 (1984). See, also, DR 9–102. An attorney may not use client trust funds to cover business expenses. *State ex rel. NSBA v. Veith, supra.* Further, the referee correctly found that Bruckner's cashing of the checks as payment on a fee is not a defense to a violation of DR 9–102(B)(1) and (3), where there was not full disclosure to the client and full agreement by the client as to the attorney's right to a fee.

Based upon Bruckner's admissions and other clear and convincing evidence in the record, this court finds that Bruckner, by knowingly commingling and misappropriating trust funds, inexcusably breached his oath of office and his duty to Anthony.

## DISCIPLINE

While we accept the referee's findings of fact relevant to the formal charges, we do not accept the referee's recommendation that Bruckner be publicly reprimanded and placed on probation for 1 year. The relator is correct in asserting that straight probation is too lenient a discipline under the facts and circumstances of this case. To determine whether and to what extent discipline should be imposed, it is necessary that the following factors be considered: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) his or her present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Gleason*, 248 Neb. 1003, 540 N.W.2d 359 (1995); *State ex rel. NSBA v. Ogborn*, 248 Neb. 767, 539 N.W.2d 628 (1995); *State ex rel. NSBA v. Veith, supra*.

Absent mitigating circumstances, the appropriate discipline in cases of misappropriation or commingling of client funds is disbarment. *State ex rel. NSBA v. Woodard, ante* p. 40, 541 N.W.2d 53 (1995); *State ex rel. NSBA v. Gleason, supra*; *State ex rel. NSBA v. Veith, supra*. Mitigating factors will overcome the presumption of disbarment in misappropriation and commingling cases only if they are extraordinary and, when aggravating circumstances are present, substantially outweigh as well those aggravating circumstances. See *State ex rel. NSBA v. Gleason, supra*. Illustrative of the seriousness of these offenses is *State ex rel. NSBA v. Gleason, supra*, wherein we suspended the offender's license to practice law even though he had been diagnosed as suffering from depression prior to the time of the misappropriation, and *State ex rel. NSBA v. Gilroy*, 240 Neb. 578, 483 N.W.2d 135 (1992), wherein we suspended for 1 year the offender's license to practice law, notwithstanding that he had his client's permission to use the client's money.

With the foregoing in mind, we turn to a consideration of whether there are factors present in this case which would mitigate the usual sanction of disbarment.

There is no question that misappropriation of client funds, as one of the most serious violations of duty an attorney owes to his client, the public, and the courts, typically warrants disbarment. *State ex rel. NSBA v. Woodard, supra*; *State ex rel. NSBA v. Gleason, supra*; *State ex rel. NSBA v. Ogborn, supra*. Bruckner admits that he failed to maintain the integrity of client funds. The offense involved in this case is very serious and warrants severe discipline.

We give no weight to the fact that Bruckner provided an accounting and client fund distribution to Anthony. The fact that no client suffered any financial loss does not excuse the misappropriation of client funds and does not provide a reason for imposing a less severe sanction. *State ex rel. NSBA v. Woodard, supra*; *State ex rel. NSBA v. Veith*, 238 Neb. 239, 470 N.W.2d 549 (1991).

The referee found, and we acknowledge, that Bruckner has instituted procedures to ensure that his trust accounting system will comply with the letter of the disciplinary rules and the ethical considerations of the Code of Professional Responsibility. While Bruckner's actions are commendable in this regard, these actions should have been taken nearly 40 years ago when Bruckner began practicing law and shall be given little weight as a mitigating factor at this point in time.

We, however, accept the referee's finding that the conduct at issue is an isolated incident and does not represent a pattern of conduct by the respondent. Bruckner has practiced law in the State of Nebraska since 1956, and no other complaints have been filed against Bruckner prior to or after the charged conduct. The record reflects that Bruckner has been a longstanding member of the bar association committee on alcoholism and drug abuse, and he has been a consistent advocate of attorney rehabilitation for over 20 years. While an isolated incident of misappropriation is very serious, it is axiomatic that multiple acts of misconduct are deserving of more serious sanctions and are distinguishable from isolated incidents. Compare, e.g., *State ex rel. NSBA v. Woodard, supra*

(attorney misappropriated and commingled funds of four clients and failed to maintain complete records and render appropriate accounts for two clients—penalty of disbarment), with *State ex rel. NSBA v. Miller*, 225 Neb. 261, 404 N.W.2d 40 (1987) (attorney charged with single, isolated incident of misappropriation made full accounting and restitution to client and terminated alcohol abuse prior to disciplinary proceedings—penalty of suspension).

We also take into account the affidavits submitted which detail Bruckner's extraordinary involvement and conscientious service to the bar and to his clients during a lengthy legal career. The same affidavits attest to Bruckner's good reputation in the community and his competence as a lawyer. See *State ex rel. NSBA v. Miller, supra*. In addition to those affidavits avowing Bruckner's present and future fitness to continue in the practice of law, we also take into account Bruckner's full cooperation with the referee and Counsel for Discipline as evidence of his remorseful attitude in these proceedings. See *State ex rel. NSBA v. Gleason*, 248 Neb. 1003, 540 N.W.2d 359 (1995).

Bruckner's violation of his oath of office as an attorney and his violation of the ethical standards governing the conduct of attorneys are serious matters. Although the misconduct charged was an isolated incident and there was no specific monetary damage to a client, a mere reprimand and 1–year probation would be too lenient a sanction. We must impose a disciplinary sanction to deter others from misconduct similar to Bruckner's in order to protect the public and to maintain the reputation of the bar as a whole. Disbarment is certainly warranted for the type of misappropriation that occurred in this case, even though Bruckner provided an accounting and client fund distribution to Anthony. However, this court has found suspension to be the proper punishment in situations where the violation was grievous but the totality of the circumstances warranted some leniency. See, *State ex rel. NSBA v. Gleason, supra*; *State ex rel. NSBA v. Gilroy*, 240 Neb. 578, 483 N.W.2d 135 (1992); *State ex rel. NSBA v. Miller, supra*.

Under the totality of the circumstances in this case, the mitigating factors substantially outweigh the isolated, single

aggravating circumstance of misappropriation sufficiently to overcome the presumption of disbarment. After a de novo review of the record, including the recommendation of the relator and a balancing of all mitigating factors against the need to protect the public and the maintenance of the reputation of the bar as a whole, we conclude that the appropriate sanction is to suspend Bruckner from the practice of law effective immediately.

## CONCLUSION

It is therefore the judgment of this court that Richard J. Bruckner be suspended from the practice of law in the State of Nebraska effective immediately. Bruckner is directed to pay costs in accordance with Neb. Rev. Stat. §§ 7–114 and 7–115 (Reissue 1991).

JUDGMENT OF SUSPENSION.

WHITE, C.J., and FAHRNBRUCH and WRIGHT, JJ., not participating.