706 A.2d 1080

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Lester A.D. ADAMS.**

**Misc. (Subtitle BV) No. 43, Sept. Term, 1996.**

Court of Appeals of Maryland.

March 12, 1998.

88

Melvin Hirshman, Bar Counsel, and Raymond A. Hein, Assistant Bar Counsel, for Attorney Grievance Commission, for petitioner.

Melvin G. Bergman, Beltsville, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and DALE R. CATHELL, Judge (Specially Assigned).

DALE R. CATHELL, Judge, Specially Assigned.

Petitioner Attorney Grievance Commission filed, by Bar Counsel, a Petition for Disciplinary Action in this Court against respondent Lester A.D. Adams on October 30, 1996. The petition alleged violations of Rules 1.15, 4.1, 8.1, and 8.4 of the Maryland Rules of Professional Conduct, a violation of Maryland Rule 16–604, and a violation of Md.Code (1989, 1995 Repl.Vol.), § 10–306 of the Business Occupations & Professions Article (BOP). Pursuant to Rule 16–709 b,[1] this Court referred the matter to the Honorable Sheila R. Tillerson–Adams of the Circuit Court for Prince George's County for a hearing on the matter.

Upon conducting a hearing on the matter on May 15, 1997, Judge Tillerson–Adams found that Bar Counsel did not prove by clear and convincing evidence that respondent had violated Rules 8.4(c) or (d), 4.1, 8.1(b), or BOP § 10–306. She did find by clear and convincing evidence, however, that respondent had violated Maryland Rule 16–604[2] and

---

**1.** Formerly Maryland Rule BV9b.

**2.** At the time this Petition was filed, this rule was codified as the former Maryland Rule BU4. Effective January 1, 1997, the rules concerning attorney discipline proceedings were renumbered. For purposes of this opinion and consistent with the parties' briefs, we shall reference the former BU4 by its new enumeration: Maryland Rule 16–604.

Maryland Rule 16–604 provides:

Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in

Rule 1.15 [3] of the Maryland Rules of Professional Conduct.

Bar Counsel excepted only to Judge Tillerson–Adams's conclusion that respondent did not violate BOP § 10–306.[4] Although he did not dispute her factual findings, respondent excepted to Judge Tillerson–Adams's conclusion that he violated Maryland Rule 16–604 and Professional Conduct Rule 1.15.

## I.

Judge Tillerson–Adams made findings of fact and conclusions in her Report and Recommendations, filed in this Court on October 21, 1997, as follows:

this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

3. Rule 1.15 provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

4. Section 10–306 provides: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

1. The Respondent has been admitted to the Practice of Law since June 17, 1992.

2. The Respondent and Merlyn G. Walker (also known as Merlyn G. McPherson) hereinafter referred to as "the Client," have been personal friends since 1980.

3. March 7, 1994, the Respondent accompanied the Client to the Office of the Director of Compliance for the Comptroller of the Treasury to secure approval for the client to reopen her restaurant, which operated under the name of "Sweet 'n Spicy."

4. March 7, 1994, the Respondent and the Client had a fortuitous meeting with Stephen M. Cordi, the Director of the Compliance Division for the Comptroller of the Treasury to negotiate the outstanding tax delinquency in an effort to keep the restaurant open.

5. The Respondent and the Client were informed by Mr. Cordi that the Comptroller needed to receive a payment of $2,000 toward the Client's delinquent taxes before the Comptroller would approve the reopening of the Client's restaurant.

6. March 7, 1994, the Respondent tendered a check to Mr. Cordi drawn on his law office operating account at Nations Bank, in the amount of $2,000, payable to the Comptroller of the Treasury.

7. The check was tendered on behalf of the Client to be applied toward her delinquent taxes.

8. The Respondent did not know whether or not he had sufficient funds in his law office operating account to cover the tendered check at the time it was written.

9. It was understood that the Client was to give the Respondent $2,000 to deposit into his operating account immediately upon her return to the restaurant on March 7, 1994.

10. On March 10, 1994 and March 16, 1994, Mr. Cordi tried to cash the $2,000 check and on both occasions the check was returned [for] insufficient funds.

11.   March 14, 1994, the Respondent received a total of $1,900 ($1,880 in cash, plus a $20 traveler's check) from the Client to reimburse him for the check he wrote on her behalf to the Comptroller.   The Client never paid the balance and still owes the Respondent $100 to cover the check.

12.   March 14, 1994, the Respondent deposited the Client's funds along with other monies for a total deposit of $2,100 into his law office operating account.   This deposit raised Respondent's account balance out of an overdraft balance which existed since February 28, 1994.

13.   The Respondent [, however,] still did not have sufficient funds in his operating account after the deposit to cover the check.

14.   The Respondent used the Client's funds, intended for reimbursement of the payment to the Comptroller of the Treasury, to cover checks written on his law office operating account for expenses and other matters unrelated to his representation of the Client.

15.   May 25, 1994, the Respondent was contacted by Mr. Cordi to discuss the bad check that was written and the continued delinquency of the Client's tax account.   The Respondent pledged to deliver a cashier's check to Mr. Cordi the next day to replace the bad check.

16.   June 15, 1994, the Respondent purchased a cashier's check but it was not hand delivered by the Respondent to Mr. Cordi until July 6, 1994[,] under a cover letter dated June 20, 1994.

17.   The Respondent received a letter dated March 13, 1995, from Raymond A. Hein, Assistant Bar Counsel.

18.   The Respondent did not respond in writing to the requests for information and records set forth in Mr. Hein's letter.   However, the Respondent responded to everything eventually through subpoena request and his subsequent interview with Bar counsel's investigator.

## II.

This Court has original and complete jurisdiction over attorney disciplinary proceedings. Md. Rule 16–709 b; *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992). Under an independent review of the record, we must determine whether the findings of the hearing judge are based on clear and convincing evidence. "If they are, and if the conclusions of law are not erroneous, we accept them and limit our discussion to any exceptions and the appropriate sanction." *Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 599, 667 A.2d 659, 664 (1995). Accordingly, this Court will make the "ultimate decision as to whether a lawyer has violated professional rules." *Id.* at 599, 667 A.2d at 663. *See also Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997).

The hearing judge concluded that Bar Counsel did not prove by clear and convincing evidence that respondent violated Rules 8.4(c) or (d), 4.1, or 8.1(b) of the Rules of Professional Conduct, or section 10–306 of the Business Occupations and Professions Article, primarily because respondent made no intentional misrepresentations in his transactions. While respondent was unsure at the time he issued the check to Mr. Cordi on his general operating account whether that account contained funds sufficient to cover the $2,000 "loan," he believed the client would reimburse him for the check later that same day. When he finally did receive from the client her partial repayment of $1,900, respondent deposited the repayment into his general operating account. Respondent's error, Judge Tillerson–Adams noted, was "when he wrote checks to other individuals using the $1,900 before the money was properly paid to the Comptroller of the State of Maryland."

Consequently, she found that respondent violated Maryland Rule 16–604 and Professional Conduct Rule 1.15(a). The judge stated that as soon as respondent realized the check to

the Comptroller would not be honored because of insufficient funds, he should have transferred the client's repayment into a trust account to avoid the funds' use in covering later-written checks. In the alternative, respondent could have forwarded directly to the Comptroller the client's partial repayment, notwithstanding that the client had not fully repaid respondent. Respondent's failure to exercise either of these options, the judge concluded, "allowed [c]lient funds to be converted and commingled with other monies in the firm's operating account."

### A. Maryland Rule 16–604

■ Rule 16–604 requires that all funds received by a lawyer from a client or third person, and designated to be delivered to a client or third person, be deposited in a trust account. Ordinarily, funds received by a lawyer that constitute the payment of attorney's fees for past services rendered or funds for "reimbursement for expenses properly advanced on behalf of the client," may not need to be deposited into a trust account. Md. Rule 16–604. *But see Attorney Griev. Comm'n v. Milliken,* 348 Md. 486, 517, n. 14, 704 A.2d 1225, 1240, n. 14 (1998), for a further discussion of the issue of "fees." As in *Milliken,* we need not resolve this issue. The funds involved in the case *sub judice* were not fees.

Respondent excepts to Judge Tillerson–Adams's conclusion that his failure to transfer the client's repayment to a trust account was a disciplinary violation. While what he did may not have been wise, respondent argues, it did not violate any rule of professional conduct because the transaction was an exception to Maryland Rule 16–604 as "expenses" loaned on the client's behalf.

Petitioner, on the other hand, asserted at oral argument that respondent's actions did not amount to an "advancement" of funds because his account did not contain sufficient funds to cover the check in the first place. Accordingly, when the client gave respondent her "repayment," it actually was trust money, or should have been deposited into a trust account, because it was designated by the client to reimburse what she

thought was a good check that, in fact, respondent had yet to pay.

■ Although we found no cases in Maryland squarely addressing the issues here presented, we are not persuaded by respondent that this transaction constituted an exception to Rule 16–604. Respondent argues that when he issued a check to the Comptroller, he forwarded funds he characterizes as "expenses" on the client's behalf for her tax obligations. Respondent's check, however, at the time he issued it and at the two times the Comptroller attempted to cash it, could no longer be considered an expenditure of the client to be advanced by respondent because in all three instances, respondent's account did not contain funds sufficient to cover the check.[5] Although all of the parties involved may have had a legitimate belief that the client would repay respondent the day respondent issued the check to the Comptroller, respondent could not loan what he did not have. At the time he issued the check, even if the matter involved advancement of proper expenses under the exception, respondent was not advancing expenses on the client's behalf because he had insufficient funds to advance.

■ It follows that the client's "repayment" of $1,900 to respondent was not a reimbursement for advanced "expenses" because respondent never actually advanced "expenses"; he only advanced a worthless check to the Comptroller. Thus, the client's delivery of the $1,900 to respondent could no longer be considered a "reimbursement for expenses properly advanced on [her] behalf" under Maryland Rule 16–604, but the advancement of her own funds to fulfill the preexisting and not properly paid tax obligation to the Comptroller. Accordingly, respondent, upon receiving the funds, had an obligation under Rule 16–604 to place the money in a trust account or forward the money directly to the Comptroller, which he failed to do.

---

**5.** To be sure, respondent testified that when he wrote the check, he was unsure whether his account had funds sufficient to cover the $2,000 check. In fact, it did not.

Respondent also argues that because the client repaid only $1,900 of the $2,000 "advanced" on her behalf, to transfer those personal funds to the trust account would have resulted in the impermissible commingling of his personal funds with other client's .funds in the trust account. This argument, however, is predicated upon the notion that the client's "repayment" retained its character as a reimbursement for expenses advanced on her behalf. As we stated *supra*, it did not. Therefore, no commingling would have occurred had respondent deposited the client's $1,900 into the trust account. Accordingly, we overrule respondent's first exception.

### B. Rule 1.15

Rule 1.15(a) of the Rules of Professional Conduct requires that an attorney keep funds belonging to his client or third party, but in the attorney's possession, in a separate trust account. Respondent argues the trial court erred in determining he violated Rule 1.15(a) because the $1,900 received from the client belonged to respondent, not to the client. Therefore, respondent concludes, "there was no [client] property to safeguard."

In light of our discussion, *supra*, respondent's argument is unavailing. The $1,900 was not a repayment under the circumstances of this case. The client's alleged repayment to respondent was actually her own funds, which should have been delivered by respondent to the Comptroller. Accordingly, because the $1,900 belonged to the client and not to respondent, he was required to safeguard her property, the $1,900, in a trust account in accordance with Rule 1.15(a). *See Attorney Grievance Comm'n v. Kemp*, 303 Md. 664, 678–79, 496 A.2d 672, 679 (1985). We have held that even an unintentional violation of this rule is still a violation. *Glenn*, 341 Md. at 472, 671 A.2d at 475–76. The hearing judge did not err and, therefore, we overrule respondent's second exception.

As we noted, *supra*, we found no Maryland cases controlling the issues presented under the circumstances herein described. Likewise, we could find no other similar cases from our sister states. A few cases, however, relate tangentially to

the case at hand and lend support to the notion that an attorney's misuse of client funds or failure to use client funds in the matter directed by the client may convert the characteristics of those funds to client trust money. *See Matter of Stivers*, 683 N.E.2d 1312, 1313 (Ind.1997) (holding attorney's use of client funds, which had been deposited into a trust account, converted client funds into attorney's funds when attorney used those funds to satisfy his monthly bank service charges); *State ex rel. Nebraska State Bar Ass'n v. Bruckner*, 249 Neb. 361, 365, 543 N.W.2d 451, 455 (1996)(" 'Any unauthorized use ... of clients' funds entrusted to [an attorney], including not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom' " is misappropriation (quoting *State ex rel Nebraska State Bar Ass'n v. Veith*, 238 Neb. 239, 245, 470 N.W.2d 549, 554 (1991))). *See also In re Ray*, 675 A.2d 1381, 1386 (D.C.App.1996).

We turn now to petitioner's exception regarding respondent's alleged violation of BOP § 10–306.

### C. § 10–306

Petitioner excepts to Judge Tillerson–Adams's conclusion that respondent did not violate section BOP § 10–306. This statute states: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." Petitioner predicates this exception upon two premises. First is the notion that the money was, in fact, trust money. Second, petitioner relies upon Judge Tillerson–Adams's finding at paragraph 14 that respondent misused these funds, "intended for reimbursement of the payment to the Comptroller of the Treasury, to cover checks written on his law office operating account for expenses and other matters unrelated to his representation of the [c]lient."

We have said that in order to invoke disciplinary proceedings for a violation of section 10–306, section "10–307 requires that the attorney's violation of [section] 10–306 must be *willful*." [6] *Glenn*, 341 Md. at 482, 671 A.2d at 479 (footnote

---

**6.** Section 10–307 provides that:

omitted). We went on in *Glenn* to note that while willfulness "does not require some proof of a specific criminal intent, it does require at least proof of a general intent." *Id.* at 482, 671 A.2d at 480.

■ The hearing judge did not state with specificity her reason for concluding respondent did not violate section 10–306. Judge Tillerson–Adams did state, however, that "the actions of [r]espondent were not intentional." Further, she described respondent's handling of the client's funds as negligent and dilatory, indicating that his actions amounted to sloppy and derelict behavior rather than a willful act. We therefore conclude that the hearing judge was not clearly erroneous in finding that Bar Counsel did not prove by clear and convincing evidence that respondent willfully violated section 10–306. Accordingly, Bar Counsel's exception is overruled.

### III.

■ The remaining issue is one of sanctions. We have said that the purposes of attorney disciplinary proceedings are to protect the public and the integrity of the legal profession, not to punish the individual offender. *Attorney Grievance Comm'n v. Awuah*, 346 Md. 420, 435, 697 A.2d 446, 454 (1997); *Glenn*, 341 Md. at 483, 671 A.2d at 480; *Kemp*, 303 Md. at 680, 496 A.2d at 680. The severity of the sanction varies with the circumstances of each case and takes into account mitigating factors. *Glenn*, 341 Md. at 484, 671 A.2d at 480; *Powell*, 328 Md. at 300, 614 A.2d at 114.

■ In the case at hand, although respondent's actions were sloppy and negligent, and involved the inappropriate handling of client funds, his conduct did not amount to an intentional misuse of the client's funds. Further, in mitiga-

---

A lawyer who *willfully* violates any provision of this Part I of this subtitle, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10–303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide. [Emphasis added.]

tion, the hearing judge found that this was respondent's first such violation, the client was a personal friend of the respondent, respondent's primary intentions in "loaning" the money were good,[7] and the $1,900 given to respondent by the client subsequently *was paid* to the Comptroller. Accordingly, we believe the appropriate sanction is a thirty-day suspension from the practice of law. Respondent shall pay all costs assessed in this matter. Upon the conclusion of the thirty-day suspension, respondent shall be supervised, at his own expense, by a monitor who will oversee respondent's practice as to the conduct of his operating and trust accounts, for a period of one year.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST LESTER A.D. ADAMS.**

---

**7.** We do not agree that lending money to clients should be characterized as a good practice. It is, instead, as this case indicates, a risky practice.