842 A.2d 42

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**John B. STOLARZ.**

**Misc. AG No. 96, Sept. Term, 2002.**

Court of Appeals of Maryland.

Feb. 11, 2004.

388

Melvin Hirschman, Bar Counsel for Atty. Grievance Com'n, for petitioner.

Andrew Jay Graham, Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (retired, specially assigned), JJ.

HARRELL, J.

I.

John B. Stolarz, Respondent, was admitted to the Bar of this Court on 9 November 1979. Stolarz is also a member of the Bar of California and a certified public accountant. He has engaged in the active practice of law in Maryland for approximately the last 23 years. The Attorney Grievance Commission ("the Commission"), acting through Bar Counsel,

filed a petition with this Court for disciplinary action against Stolarz alleging violations of the Maryland Rules of Professional Conduct (MRPC) in his representation of Stephen Kreller in connection with a personal injury case. Based on a complaint from an assignee/creditor of Kreller, the Commission charged Stolarz with violating Rules 1.15(b) (Safekeeping Property) [1] and 8.4(d) (Misconduct). [2] The charges stemmed from a complaint by Melina Winterton, representative of the Bank of the Commonwealth ("the bank") in Norfolk, Virginia. Pursuant to Maryland Rule 16–752(a), [3] we referred the matter to Judge Thomas E. Noel of the Circuit Court for Baltimore City to conduct an evidentiary hearing and make findings of fact and conclusions of law.

Judge Noel held an evidentiary hearing on 17 June 2003. Petitioner was represented by Bar Counsel and Respondent was represented by counsel. The matter was taken under advisement, and the parties submitted Proposed Findings of Fact and Conclusions of Law. On 16 July 2003, Judge Noel filed the following findings of fact and conclusions of law:

---

1. Rule 1.15(b) provides that:

 (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

2. Rule 8.4 provides in relevant part:

 It is professional misconduct for a lawyer to:

 (d) engage in conduct that is prejudicial to the administration of justice. . . .

3. Rule 16–752(a) (Order designating judge) provides:

 Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

*Findings of Fact*

"The Court finds that the following facts have been proven by clear and convincing evidence:

"1. The Petition of Disciplinary or Remedial Action filed against Respondent, John B. Stolarz, alleges Professional Misconduct in violation of Maryland Rules of Professional Conduct 1.15(b) and 8.4(d) respectively.

"2. This claim arose from Respondent's representation of Stephen Kreller in connection with a personal injury case.

"3. Kreller obtained a loan from the Bank of the Commonwealth ('Complainant') in Norfolk, Virginia, for $300.00 by using his potential recovery in the personal injury case as collateral.

"4. Respondent had no knowledge of the transaction between Kreller and Complainant until he received an 'Attorney Acknowledgement' [misspelling in original document] form via facsimile from Complainant on November 2, 2000.

"5. Stolarz executed the Attorney Acknowledgement on November 6, 2000, thereby agreeing to honor Complainant's lien out of any funds received by settlement or court order on behalf of Kreller. The acknowlegement, [sic] however, states that Respondent is not a personal guarantor of th[e] loan.

"6. The personal injury case settled on or about January 19, 2001 for $9200.00. On that date Stolarz prepared a 'Settlement Disbursement Memorandum' listing all expenses to be paid from the settlement, including creditors and attorney's fees. Kreller reviewed the memorandum, which clearly stated that the client is under a duty to advise the attorney of any expenses that were not listed. The client signed the document acknowledging that he had received it, accepted the notices therein, and authorized disbursement.

"7. From the settlement Respondent made disbursements to certain medical providers on Kreller's behalf and deducted his fee for the personal injury case, as well as, for

representation of the client in a prior criminal matter. All the remaining funds were released to Kreller.

"8. Stolarz admittedly neglected to list the loan from Complainant as one of Kreller's obligations to be paid out of the settlement proceeds and made no payment to them.

"9. In October of 2001, Complainant learned that the case had been settled and that settlement check had been disbursed in the names of Stolarz and Kreller. Complainant contacted Respondent to obtain payment on the lien.

"10. Respondent contacted his client and advised him to pay off the loan, to which Keller agreed, however, Kreller failed to contact Complainant or to make any payments.

"11. In December of 2001, Complainant demanded that Stolarz pay the loan. Respondent agreed to try to compromise in order to resolve the matter as he was partly responsible for the outstanding debt. Attempts at compromise failed.

"12. On February of 2002, Complainant left a phone message with Respondent advising him that a complaint would be filed against him. May 1, 2002, Complainant's representative wrote to Stolarz to reiterate that a complaint would be filed with the Attorney Grievance Commission of Maryland.

"13. In a letter dated May 2, 2002, Respondent informed Complainant that he would file suit against it should a complaint, which he considered defamatory, be filed.

"14. The Attorney Grievance Commission of Maryland received Complainant's formal complaint on May 6, 2002.

"15. On February 3, 2003, the Maryland Court of Appeals Ordered that this Court hear this matter.

*Conclusions of Law*

"A. Respondent is accused of violating Maryland Rule of Professional Conduct 1.15(b) which states: 'Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permit-

ted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

"B. After the settlement check was issued to Respondent, he admittedly failed to promptly notify Complainant, a third party with interest in the settlement funds, that a settlement had been received. Respondent, while paying other creditors on Kreller's behalf out of the settlement proceeds, admits to failing to make payment to Complainant due to his own oversight.

"C. This Court finds by clear and convincing evidence that Respondent, in failing to 'promptly notify' Complainant of receipt of the settlement funds and failing to 'promptly deliver' Complainant's interest in those funds, violated Maryland Rule of Professional Conduct 1.15(b).

"D. Respondent is also accused of violating Maryland Rule of Professional Conduct 8.4(d), which states that it is professional misconduct to: 'engage in conduct that is prejudicial to the administration of justice.'

"E. It is alleged that Respondent's letter, dated May 2, 2002, to Complainant was a threat intended to deter the filing of a complaint with the Attorney Grievance Commission of Maryland.

"F. Maryland courts have generally found two specific types of conduct as prejudicial to the administration of justice. First, conduct that impacts on the image or the perception of the courts or the legal profession and that engenders disrespect for the courts and for the legal profession. *Attorney Grievance Commission v. Alison,* 317 Md. 523, 565 A.2d 660 (1989). The second, conduct that is criminal in nature or conduct. *Attorney Grievance Commission v. Sheinbein,* 372 Md. 224, 812 A.2d 981 (2002).

"G. Respondent testified that he wrote the letter dated May 2, 2002, warning Complainant that he would sue ... for defamation as a response to a phone call from Complain-

ant's representative threatening to file a complaint that would allege that Stolarz was misusing escrow funds. That conversation was not memorialized and Complainant's representative was not present at the hearing to testify about that communication. Furthermore, Stolarz maintains that he believes the Complainant threatened to bring this action in an effort to collect his client's debt, which is certainly not a legitimate or appropriate use of the grievance procedures of this state. Moreover, it is clear from the tenor of the letters written between the parties and to the Attorney Grievance Commission, that there was a great deal of tension between the Complainant and Respondent. Based upon the aforementioned reasons this Court finds by clear and convincing evidence that Respondent did not act unreasonably in warning Complainant that a defamation claim would be asserted when he rationally believed that Complainant would defame him.

"H. Therefore, this Court finds and does conclude that the actions of Respondent in threatening to file a defamation actions against Complainant are not so appalling or egregious as to warrant a finding of conduct prejudicial to the administration of justice. Respondent's actions have caused no negative impact on the image or perception of the legal profession nor has he engendered disrespect for the profession. Additionally, Respondent's actions were not criminal."

Bar Counsel took exception to Judge Noel's conclusion of law that Stolarz's conduct did not violate Rule 8.4(d), and further recommended a sanction of indefinite suspension with the right to reapply no earlier than thirty days. At oral argument, however, Bar Counsel, noting that Stolarz, from personal funds, had paid off the bank loan to his client, changed his sanction recommendation to a public reprimand. Stolarz took exception to six of Judge Noel's findings of fact. Stolarz also excepted to Judge Noel's conclusion of law regarding violation of Rule 1.15(b). Based on his exceptions, Stolarz suggested that we dismiss these disciplinary proceedings in their entirety.

## II.

### A. Standard of Review

This Court exercises original jurisdiction over attorney discipline proceedings. *Attorney Griev. Comm'n v. Blum,* 373 Md. 275, 293, 818 A.2d 219, 230 (2003); *Attorney Griev. Comm'n v. Harris,* 371 Md. 510, 539–40, 810 A.2d 457, 474–75 (2002). We conduct an independent review of the record, accepting the hearing judge's findings of fact unless clearly erroneous. *Attorney Griev. Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763 (2002); *Attorney Griev. Comm'n v. Wallace,* 368 Md. 277, 288, 793 A.2d 535, 542 (2002). We will not disturb the factual findings of the hearing judge if they are based on clear and convincing evidence. *Attorney Griev. Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002). Our review of the hearing judge's conclusions of law is *de novo. Attorney Griev. Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002); *Attorney Griev. Comm'n v. Dunietz,* 368 Md. 419, 428, 795 A.2d 706, 711 (2002).

Maryland Rule 16–757(b) [4] requires the Commission to prove the averments of the complaint by clear and convincing evidence. Respondent must only establish an affirmative defense or a matter of mitigation or extenuation by a preponderance of the evidence. Md. Rule 16–757(b). Maryland Rule 16–759 requires this Court, when exceptions to the hearing judge's findings are taken properly, to determine whether the findings of fact have been proven by the requisite standards of proof set out in Rule 16–757(b).[5]

---

**4.** Maryland Rule 16–757(b) provides: "The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence."

**5.** Maryland Rule 16–759(b) states:

(1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

The hearing judge as the trier of fact "may elect to pick and choose which evidence to rely upon." *Attorney Griev. Comm'n v. Kemp,* 303 Md. 664, 675, 496 A.2d 672, 677 (1985) (citation omitted). Deference to the hearing judge's factual findings is paid by us, in part, because the fact finder is in the best position to assess first hand a witness's credibility. *Attorney Griev. Comm'n v. Sheridan,* 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999).

### B. Factual Exceptions

We have reviewed the record and conclude that Judge Noel's findings of fact, however labeled, are supported by clear and convincing evidence. Thus, we overrule Stolarz's exceptions. Also, we note that four of his exceptions, even were they well taken, would not be material to the issue of whether he violated Rule 1.15(b). The thrust of those four of Stolarz's factual exceptions are that: (1) he did not personally benefit when the bank was not paid off from the settlement; (2) he took reasonable steps to persuade his client Kreller to repay the loan, (3) he was willing to negotiate with the bank in good faith; and (4) he was remorseful. Such matters are more properly considered in mitigation of sanction if a violation is otherwise found to have occurred.

Stolarz's remaining two factual exceptions complain of Judge Noel's alleged failure to find certain facts. First, Stolarz takes exception "to the Circuit Court's failure to find, as requested by Respondent, that Commonwealth [the bank] threatened to file a complaint or grievance against Respondent falsely alleging that he had personally misused trust funds." Second, Stolarz takes exception "to the trial court's failure to

---

(2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

find the Respondent's advice to Commonwealth that he would take remedial action against Commonwealth if it were to file a false accusation was not an action taken by Respondent with any improper intent, but rather reflected his indignation at the collection methods being utilized by Commonwealth and the false accusation that Respondent had engaged in intentional and unethical misconduct by allegedly misusing trust funds."

Stolarz's latter two exceptions are misplaced because Judge Noel embraced adequately these factual findings in the "conclusions of law" section of his written decision. In concluding that Stolarz did not violate Rule 8.4(d), Judge Noel explained that

Respondent testified that he wrote the letter dated May 2, 2002, warning Complainant that he would sue ... for defamation as a response to a phone call from Complainant's representative threatening to file a complaint that would allege that Stolarz was misusing escrow funds. That conversation was not memorialized and Complainant's representative was not present at the hearing to testify about that communication. Furthermore, Stolarz maintains that he believes the Complainant threatened to bring this action in an effort to collect his client's debt, which is certainly not a legitimate or appropriate use of the grievance procedures of this state.

## C. Rule 1.15(b)

Stolarz excepts to Judge Noel's legal conclusion that he violated Rule 1.15(b). He argues that his failure to pay off the bank loan at the time of settlement was a "completely innocent error that could happen in any attorney's practice." We do not accept the implication of Stolarz's argument that Rule 1.15 contains an "innocent error" safe harbor exception. This Court has explained on numerous occasions that with regard to Rule 1.15 "an unintentional violation of this rule ... is still a violation of the attorney's affirmative duties imposed by the rule." *Sheridan,* 357 Md. at 20, 741 A.2d at 1154 (quoting *Glenn,* 341 Md. at 472, 671 A.2d at 475). *See also*

*Attorney Griev. Comm'n v. Adams,* 349 Md. 86, 96, 706 A.2d 1080, 1085 (1998).

 A lawyer should hold settlement funds with the care of a professional fiduciary. *Advance Fin. Co. v. Trustees of Clients' Sec. Trust Fund of Bar of Maryland,* 337 Md. 195, 210, 652 A.2d 660, 667 (1995) (a fiduciary ethical obligation to a non-client is embodied in Rule 1.15). As the bank had an interest in the settlement proceeds, Rule 1.15(b) imposed on Stolarz ethical duties of notification, payment, and accounting to that creditor. The lawyer must recognize the creditor's interest in the settlement funds in the lawyer's possession.

 Maryland permits plaintiffs to create valid assignments of the proceeds of personal injury claims. *See Hernandez v. Suburban Hosp. Ass'n,* 319 Md. 226, 235, 572 A.2d 144, 148 (1990). An assignment covering the proceeds of a case is an interest, even if the lawyer did not participate in its creation. In the present case, Stolarz expressly promised to abide by the assignment and, therefore, the contract between his client and the bank bound him to act in consonance. As the assignment between the client and creditor gave the creditor an enforceable interest in the proceeds of the settlement, Stolarz's knowledge and signing of the agreement is sufficient to raise ethical duties to the creditor. The basis of such duties is the fundamental duty of lawyers to deal honestly with third parties. *See* Rules 4.1 and 8.4.

 If the creditor's claim is a valid interest and the amount of that interest is undisputed, then the lawyer should disperse directly to the creditor from the settlement proceeds. After the settlement check was issued to Stolarz, he admittedly failed promptly to notify the creditor bank that a settlement had been received. Stolarz, while paying other creditors on his client's behalf out of the settlement proceeds, admits to failing to make payment to the bank due to oversight. Although the oversight was innocent, Judge Noel found, by clear and convincing evidence, with which this Court agrees, that Stolarz, in failing to "promptly notify" the bank of receipt of

the settlement funds and failing to "promptly deliver" to the bank those funds due it, violated Rule 1.15(b).

### D. Rule 8.4(d)

█ Bar Counsel excepts to the trial judge's failure to find a violation by Stolarz of Rule 8.4(d). It is Bar Counsel's position that Stolarz indicated to the bank that he would sue it for defamation as a threat intended to deter the filing of a complaint with the Attorney Grievance Commission of Maryland. Bar Counsel points out that the Court of Special Appeals, in *Kerpelman v. Bricker*, 23 Md.App. 628, 630, 329 A.2d 423, 425 (1974), held that the content of a complaint filed with the Attorney Grievance Commission is absolutely privileged.

Stolarz testified that he warned the bank that he would sue "for defamation as a response to a phone [message] from Complainant's representative threatening to file a complaint that would allege that Stolarz was misusing escrow funds." What words that literally were employed in the telephone message from the bank are not memorialized in this record, except as characterized by Stolarz's testimony. The bank's representative did not attend the hearing to testify. As such, Judge Noel, in his factual findings and conclusions, relied on Stolarz's testimony, as he had the right to do, and found that Stolarz's threatened defamation lawsuit was based on his belief that the bank intended to assert that he had misused client escrow monies and his further belief, perhaps mistaken, that such an allegation included in a complaint to the Commission was actionable if false. Judge Noel, however, did not consider Stolarz's conduct as necessarily aimed as a preemptive strike merely to forestall a grievance complaint as such from being filed. This finding is not clearly erroneous based on the limited record in this case and we therefore decline to overrule it.[6]

---

6. This should not be read as an endorsement of attorneys threatening reprisals against persons with the intent to dissuade them from filing complaints with the Attorney Grievance Commission.

### III. Sanction

Consideration of the appropriate sanction is guided by our interest in protecting the public and the public's confidence in the legal profession. *Attorney Griev. Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002). The purpose of these proceedings is not to punish the lawyer, but any sanction imposed should deter other lawyers from engaging in similar misconduct. *Attorney Griev. Comm'n v. Mooney,* 359 Md. 56, 96, 753 A.2d 17, 38 (2000). The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Griev. Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997).

In the majority of cases nationally, it appears that sanctions are imposed on lawyers for violations of Rule 1.15 or its kin. *See* Charles M. Cork III, *A Lawyer's Ethical Obligations When the Client's Creditors Claim a Share of the Tort Settlement Proceeds,* 39 TORT TRIAL & INS. PRAC. L.J. 121, 134 (2003) (finding that since 1996 sanctions have been increasingly imposed upon lawyers for violations of Rule 1.15). This Court has issued sanctions for Rule 1.15 violations ranging from a public reprimand to various forms of suspension when the lawyer engaged in conduct that did not amount to an intentional misappropriation or dishonesty. *See Attorney Griev. Comm'n v. Seiden,* 373 Md. 409, 818 A.2d 1108 (2003) (imposing thirty days suspension for violations of Rules 1.1, 1.15(a), 8.4(a), and 8.4(d) where the attorney had no previous disciplinary problems, was remorseful, and the conduct directly resulted from representing a particularly difficult client); *Attorney Griev. Comm'n v. McClain,* 373 Md. 196, 817 A.2d 218 (2003) (imposing thirty days suspension for violations of Rules 1.15(a) and § 16–606 of the Business Occupations and Professions Article of the Maryland Code where the attorney corrected his violation, subsequently took a course in escrow account management, and had no previous disciplinary proceedings); *Attorney Griev. Comm'n v. Dicicco,* 369 Md. 662, 688, 802 A.2d 1014, 1028 (2002) (imposing an indefinite suspension with the right to reapply in ninety days for violations of

Rules 1.15(a), 1.15(c) and 8.4(a) where, despite of the attorney's negligent and sloppy administration of trust accounts, there was an absence of fraudulent intent, the attorney had no previous disciplinary problems in thirty-eight years of practice, and the attorney's clients did not suffer a financial loss); *Attorney Griev. Comm'n v. Adams,* 349 Md. 86, 98–99, 706 A.2d 1080, 1086 (1998) (imposing an indefinite suspension with the right to reapply in thirty days for violations of Rule 1.15 and Maryland Rule 16–604 where the lawyer's conduct was a negligent, unintentional, misappropriation, and where the violation was the attorney's first, the client was a friend of the attorney, the attorney had good intentions, and the monies were paid to the Comptroller); *Attorney Griev. Comm'n v. McIntire,* 286 Md. 87, 96, 405 A.2d 273, 278 (1979) (issuing a public reprimand for violations stemming from a fee dispute between the lawyer and his client where there was not intentional wrongdoing, deceit or dishonesty). The present case, we think, plumbs the depth of the shallow end of the sanction pool.

The appropriate severity of the sanction depends upon the facts and circumstances of the case, taking account of any particular aggravating or mitigating factors. *Attorney Griev. Comm'n v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994). In *Glenn,* we set forth a helpful framework for sanction analysis:

> Along with our own cases as precedent in determining the appropriate sanction, it is helpful for us to refer to the ABA Standards. These standards create an organizational framework that calls for a consideration of four questions:
>
> (1) What is the nature of the ethical duty violated?
>
> (2) What was the lawyer's mental state?
>
> (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?
>
> (4) Are there any aggravating or mitigating circumstances?

*Glenn,* 341 Md. at 484, 671 A.2d at 480 (citing Standard 3.0 of the ABA Standards for Imposing Lawyer Sanctions, *reprinted*

*in Selected Statutes, Rules and Standards on the Legal Profession* 301 (1987)).

We have discussed already the nature of Stolarz's ethical violation. He failed to notify the third-party assignee/creditor of his client of the receipt of settlement funds and failed timely to pay the bank's assignment in violation of Rule 1.15(b). Our next step is to consider the state of mind of Stolarz at the time of the violation. In *Glenn,* we explained:

> The ABA standards establish graduated levels of culpability, with the most culpable mental state that of intent, the next most culpable mental state that of knowledge, and the least culpable mental state that of negligence. Intent is defined as "the conscious objective or purpose to accomplish a particular result." Knowledge is defined as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." Negligence is defined as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."

*Glenn,* 341 Md. at 485, 671 A.2d at 481.

At the settlement, Stolarz made disbursements to certain medical providers on his client's behalf, deducted his fee, and then released all remaining funds to his client. At the disciplinary hearing, Stolarz admitted he neglected to list the loan from the bank as one of his client's obligations and made no payment to it. There is no evidence to suggest Stolarz acted intentionally. Stolarz's misconduct in this regard was simply negligent.

We next consider the extent of actual or potential injury caused by Stolarz's misconduct. *See Glenn,* 341 Md. at 488, 671 A.2d at 483. Stolarz became an intermediary between a lender and a financially irresponsible client who knowingly failed to honor his obligation to repay the loan. Stolarz has repaid his client's $300.00 principal loan, and interest, in the amount of $1,095.87.

Lastly, we consider a non-exhaustive list of mitigating factors that include:

Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude towards proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Glenn,* 341 Md. at 488–89, 671 A.2d at 483.

Stolarz, a member of the Bar of this State since 1979, has no prior disciplinary record. Stolarz cooperated with Bar Counsel during the investigation, providing full and free disclosure. Moreover, Stolarz did not benefit personally. Stolarz made a mistake when reviewing his file prior to disbursing his client's settlement funds. This mistake did not enure in any measure to Stolarz's benefit. Stolarz advised his client to read over the settlement sheet. His client, who surely knew of the loan obligation, made no mention of the fact that the bank loan was not listed on the settlement sheet. When the oversight was made known, Stolarz took steps to attempt to persuade his client to repay the loan. In addition, Stolarz initially evinced a willingness to negotiate in good faith with the bank regarding a compromise payment by him on the loan. Stolarz ultimately paid his client's debt in full with $1.095.87 of his own funds. Finally, Stolarz expressed genuine regret and remorse over the unfortunate chain of events.

While we ordinarily would not hesitate to impose a sanction for a violation of 1.15(b), considering the circumstances in this particular case, we wonder whether the public interest might be protected adequately if the Commission and Stolarz were given a second opportunity, in light of the proceedings as they have developed to this point, to consider a disposition under Rule 16–735(b).[7]

---

**7.** Rule 16–735(b) Dismissal or other termination of complaint. Termination accompanied by warning.

Had this case been recognized for what it is at its inception as the Court now sees it (an understandably slippery assumption), it might have been deemed appropriate to address it with a warning from the Commission. Under Rule 16–759(c),[8] we remand this case to the Commission for it to propose dismissal of the case, but with a warning to Stolarz that the conduct found here to have violated Rule 1.15(b) not be repeated. We note that under Rule 16–735(b) a warning does not constitute discipline, but is simply an admonition against repetition of the conduct.[9]

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT*

---

"(1) If Bar Counsel concludes that the attorney may have engaged in some professional misconduct, that the conduct was not sufficiently serious to warrant discipline, but that a specific warning to the attorney would be helpful to ensure that the conduct is not repeated, Bar Counsel may recommend that the termination be accompanied by a warning against repetition. If satisfied with the recommendation, the Commission shall proceed in accordance with subsection (b)(2) of this Rule and, if the warning is not rejected, accompany the termination of the disciplinary or remedial proceeding with a warning. A warning does not constitute discipline, but the complainant shall be notified that termination of the proceeding was accompanied by a warning against repetition of the conduct.

"(2) At least 30 days before a warning is issued, the Commission shall mail to the attorney a notice that states the date on which it intends to issue the warning and the content of the warning. No later than five days before the intended date of issuance of the warning, the attorney may reject the warning by filing a written rejection with the Commission. If the warning is not rejected, the Commission shall issue it on or after the date stated in the initial notice to the attorney. If the warning is rejected, it shall not be issued, and Bar Counsel may take any other action permitted under this Chapter. Neither the fact that a warning was proposed or rejected nor the contents of a warning that was not issued may be admitted into evidence."

8. Rule 16–759(c) Disposition. "The Court of Appeals may order (1) disbarment, (2) suspension, (3) reprimand, (4) inactive status, (5) dismissal of the disciplinary or remedial action, or (6) a remand for further proceedings."

9. Of course, as allowed by Rule 16–735(b)(2), Stolarz may reject the proposed warning. If the warning is rejected, then we shall consider the sanction appropriate to the case.

*TO MARYLAND RULE 16–761, FOR WHICH SUM JUDG-
MENT IS ENTERED IN FAVOR OF THE ATTORNEY
GRIEVANCE COMMISSION.*