888 A.2d 344

**ATTORNEY GRIEVANCE COMMISSION**

v.

**Peter Richard MAIGNAN.**

**Misc. Docket AG No. 4, Sept. Term, 2004.**

Court of Appeals of Maryland.

Dec. 22, 2005.

288

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel for Atty. Grievance Com'n), for petitioner.

Curtis A. Boykin, Washington, DC (Douglas, Boykin & Oden, PLLC), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

In a Petition for Disciplinary or Remedial Action, Bar Counsel, acting for the Attorney Grievance Commission, charged respondent, Peter Maignan, with violating a number of the Maryland Rules of Professional Conduct (MRPC) in the course of his representation of two clients—Hattie Lipscomb

and the Magruders. The complaint regarding Ms. Lipscomb was based on Maignan's alleged mishandling of $4,000 derived from the settlement of an action against her former landlord; the Magruder complaint involved allegations of a failure to provide a written retainer agreement and overcharging.

In accordance with Maryland Rule 16–752, we referred Bar Counsel's petition to Judge Sherrie Krauser, of the Circuit Court for Prince George's County, to conduct a hearing and present to us her proposed findings of fact and conclusions of law. Bar Counsel has filed exceptions to certain of Judge Krauser's findings with respect to the Lipscomb complaint, which we find have merit and shall sustain.

We deal first with the Magruder complaint, and do so summarily. Although Bar Counsel charged violations of MRPC 1.1 (competence), 1.5 (fees to be reasonable), 1.15 (safekeeping property), 8.1 (false statement to Bar Counsel), 8.4(c) (dishonesty), 8.4(d) (conduct prejudicial to administration of justice), Maryland Rules 16–604, 16–606, 16–607 and Maryland Code, § 10–306 of the Business Occupations and Professions Article (all dealing with attorney trust accounts), he eventually pressed only the alleged violation of MRPC 1.5.[1] The hearing judge found no violation of that rule, and Bar Counsel has not excepted to that finding. There is no need for us, therefore, to recount the record and make any determinations regarding the Magruder complaint. The Lipscomb complaint is a different matter.

Hattie Lipscomb sued her former landlord in District Court to recover the value of certain property that the landlord had wrongfully removed from the apartment. At some point, she employed an associate in respondent's office to represent her and paid the associate (and thus the firm) a fee of $750. When that associate left the office in August, 2003, respondent agreed to continue the representation. On or about September 13, 2002, respondent negotiated a settlement of the matter

---

1. The petition, as to both the Lipscomb and Magruder complaints, proceeded under and are governed by the MRPC in effect prior to the revisions that became effective July 1, 2005.

for $4,000. He informed Ms. Lipscomb of the settlement and told her that she would need to come to the office to endorse the settlement check and sign a release. Respondent testified that, after speaking with Ms. Lipscomb, he called his associate, Tesheia Wright and asked her to check the mail for the settlement check and then arrange for Ms. Lipscomb to come to the office to complete the transaction. It is conceded that respondent received the settlement check for $4,000 from Kay Management Co., Inc. by September 15, 2002.[2]

Ms. Lipscomb was pleased with the settlement. Her complaint to Bar Counsel, and Bar Counsel's petition, were based on the delay that occurred in her receiving the proceeds of the settlement. Ms. Lipscomb did not receive a check from respondent until February 19, 2003—some four months later—after she had, *pro se*, attempted to reopen the District Court case. The check was in the full amount of $4,000, the fee having already been paid.

At the hearing before Judge Krauser, respondent contended that a receptionist in his office misplaced the settlement check when it arrived and that he was unaware, until some time in December, that the check had been received and that Ms. Lipscomb had not been paid. Bar Counsel, relying on the settlement check itself and ancillary bank records, asserted that the settlement check had been promptly deposited into respondent's operating account in September and that, as the balance in the operating account dropped below $4,000 on a number of occasions between the time of the deposit and the time he paid Ms. Lipscomb, he therefore misappropriated the funds. On that premise, Bar Counsel charged respondent with violations of MRPC 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication with client), 1.15 (Safekeeping property), 5.3 (Responsibility for non-lawyer assistants), 8.1(a) (making false statement to Bar Counsel), and 8.4(a), (b), (c), and (d). Respondent was also charged with violations of Maryland Rules

---

**2.** In response to Bar Counsel's interrogatories, respondent stated that "[o]n or about September 13, 2002, a check payable to Maignan and Associates and Ms. Lipscomb was deposited to my office."

16–604, 16–606, and 16–607, dealing with attorney trust accounts, and Maryland Code, § 10–306 of the Business Occupations and Professions Article, also dealing with attorney trust accounts.

The real controversy was over what happened to the settlement check after it was received by respondent in September. Bar Counsel eventually conceded that there had been no violation of MRPC 1.3, and respondent conceded that he had, in fact, deposited the settlement check to his operating account, not his trust account, and that he drew the check to Ms. Lipscomb from the operating account. The hearing judge concluded that Bar Counsel had also conceded that there was no violation of MRPC 1.1, which Bar Counsel denies and which the record shows was not the case. Giving no weight whatever to the check itself, to the ancillary bank records, and to statements made by respondent to an Assistant Bar Counsel during her investigation of the matter, the hearing judge found as a fact that the settlement check was misplaced in respondent's office, that it was not discovered until late December, 2002, and that it was not deposited until January 6, 2003. On that finding, and with the various concessions (or, in the case of MRPC 1.1, assumed concession), she concluded that respondent had violated MRPC 1.15 and 5.3 and Rule 16–604, but that he had not violated any of the other MRPC Rules, or statutes charged by Bar Counsel.

The hearing judge did not specify which parts of MRPC 1.15 respondent violated, but, in light of her other findings, including that respondent had not misappropriated any client funds, it would appear that her finding under MRPC 1.15 was limited to a violation of section (a) of that Rule. Bar Counsel excepts to her failure to find a violation of MRPC 1.15(b), to MRPC 1.1, which he claims he did not concede, and MRPC 8.4(a) and (d).

■■■■ Original jurisdiction over attorney discipline matters resides in the Court of Appeals. We determine, ultimately, whether an attorney has committed the misconduct charged by the Attorney Grievance Commission. In accordance with

Maryland Rule 16–752, we ordinarily refer petitions for disciplinary action to a Circuit Court judge to act as a hearing officer for this Court, to take evidence and present to us proposed findings of fact and conclusions of law, to which exceptions may be taken. In all cases, we review the judge's conclusions of law *de novo*. Maryland Rule 16–759(b)(1). If exceptions are filed with respect to the judge's fact-finding, we determine whether those findings have been proven by the requisite standard of proof. Rule 16–759(b)(2)(B). In doing so, we give "due regard to the opportunity of the hearing judge to assess the credibility *of witnesses*." *Id.* (Emphasis added). It is ultimately for us, however, to determine whether the judge's findings are, indeed, supported by substantial evidence. It is against the background of these principles that we review the evidence regarding what happened to the settlement check after it was received by respondent in September, 2002.

■ Ms. Lipscomb testified that, although she was unable to come to respondent's office immediately, as she was going on vacation, she called the office several times thereafter regarding the matter. She said that on some occasions she spoke with a staff person but was never able to speak with respondent. On January 21, 2003, she wrote to respondent, complaining that she had been trying since November to get the proceeds of the settlement, that "I have made three appointments to come in and talk to you so I could receive my proceeds," that "[e]ach appointment was cancelled by your office," that, since January 1, she had called three times, that each time she got a recording and left a message, that none of the calls were returned, that she was finally given an appointment for January 20, 2003, but that, when she arrived, she was told that respondent was unavailable and that she would have to reschedule the appointment. Ms. Lipscomb's testimony and the statements in her letter were contradicted to some extent by respondent, and it was permissible for the hearing judge to make a credibility assessment with respect to the contradiction.

The critical issue before us, however, is not whether Ms. Lipscomb came to respondent's office or called to complain, but what happened to the settlement check after respondent received it in September: When was it deposited into respondent's operating account? If it was deposited in September, as Bar Counsel contends, then, in light of what the bank statements regarding that account reveal thereafter, respondent did, indeed, misappropriate the settlement funds. If, through carelessness, the check was not deposited until January, as the hearing judge found, respondent would be culpable of failing to supervise his staff and failing to place the funds in a trust account, but not misappropriation.

Based largely on the check itself and ancillary bank records, Bar Counsel maintained that respondent deposited the check in his trust account on September 18, 2002. Respondent claimed that his former receptionist put the check in a drawer and failed to inform him or the office manager that it had arrived, that he did not learn he had the check until late December or early January, and that the check was not deposited in his trust account until January 6, 2003. The hearing judge gave no weight at all to the documentary evidence—the check itself—and, crediting the office manager's testimony and that of respondent, found, as a fact, that the check was not deposited until January 6, 2003.

As noted, respondent conceded that his office received the settlement check on or about September 13. A copy of the check was admitted into evidence. On the reverse side appear four printed dates; one is September 18, 2002, and the other three are September 19, 2002. There are no January, 2003 dates on the check. Immediately following the September 18 date is the number 15018733, which the evidence shows is the account number of respondent's operating account with Citibank, the account to which respondent conceded he deposited the check. Respondent's own bank—the depository bank—stamped the check as being handled by it on September 18. That is consistent with Citibank's records regarding the account. The bank record of activity on the account during September, 2002, shows a deposit on September 18 of $4,756.

Records produced by the bank under subpoena show three checks deposited that day—the check from Kay Management for $4,000 and two personal checks, one for $256 and one for $500—a total of $4,756.

One of the September 19 dates on the back of the check was placed there by Bank of America, the drawee bank. The settlement check shows as the drawee bank NationsBank N.A., but, in *Taylor v. NationsBank,* 365 Md. 166, 169, n. 1, 776 A.2d 645, 648, n. 1 (2001), we recognized that NationsBank had merged with Bank of America. It is thus clear from the Bank of America stamp that the check cleared the drawee bank on September 19, 2002. Another of the September 19 dates is accompanied by another series of numbers, 280215938, which is also stamped on the front of the check. It is not clear who applied that stamp.

Respondent did not offer any explanation of how the September, 2002 dates got on the check or why no January, 2003 dates appear on the check. It is clear, really beyond cavil, that the check was deposited on September 18 and that it cleared the drawee bank the next day, September 19. The hearing judge's announced finding that "the bank records do not evidence deposit of the settlement check until January 2003" is fundamentally and clearly erroneous. The very document belies the judge's finding.

It is true, as we have indicated, that credibility decisions made by a hearing judge are ordinarily entitled to deference, but, despite the protestations of the dissent, not when the credibility decision is so contrary to unexplained, unimpeached, unambiguous documentary evidence as to be inherently incredible and unreliable. If the check admitted into evidence was blue in color, and we could see it was blue in color, we certainly would not accept the judge's crediting of the office manager's testimony that it was yellow. The situation here is no different.

Respondent's story about organizing a search for the settlement check and not discovering its existence until December is at odds not just with the document itself but also with the

story he told to Bar Counsel's staff in response to their request for information. On March 14, 2003, he wrote to Assistant Bar Counsel, Dolores Ridgell, that "[o]n September 15, 2002, we advised Ms. Lipscomb *that we had received the settlement check in this case* and requested that she make an appointment to discuss the conclusion of the matter" and that "[d]ue to conflicts between Ms. Lipscomb's travel schedule and our trial calendar, no such meeting could be arranged before February 2003." (Emphasis added). He continued, "At all times, however, we advised Ms. Lipscomb that we could place the check in the mail to her attention. Rather, Ms. Lipscomb requested that we meet to discuss the possibilities of further actions in the matter." That explanation—that he informed Ms. Lipscomb on September 15 that he had the check and that "all all times" he "could place the check in the mail to her attention" cannot be squared with the assertion that he was unaware that he had the check until December. How could he "at all times" place the check in the mail to her if he didn't know he had the settlement check? The letter was admitted into evidence and ignored by the hearing judge.

█ Our rejection of the hearing judge's conclusion that the check was not discovered until December and was not deposited until January fatally undermines nearly all of her other conclusions to which Bar Counsel has taken exception. The bank records produced by Citibank reveal that, as early as September 19, 2002, and at various times in October, the operating account balance fell below $4,000, which meant that respondent had spent for other purposes all or part of the funds that belonged to Ms. Lipscomb. That constitutes misappropriation of funds that respondent was obliged to hold inviolate in trust for her.

█ Bar Counsel does not argue that the misappropriation was intentional and thus seems to accept that respondent was unaware that the check had, in fact, been deposited in September. He argues, however, that respondent's failure to maintain the funds in a proper trust account demonstrates incompetence under MRPC 1.1 and that it also establishes a

violation of MRPC 1.15(a) and (b) and 8.4(d), and he is correct. In *Attorney Grievance v. James,* 385 Md. 637, 662–63, 870 A.2d 229, 244 (2005), we confirmed our holding in *Attorney Grievance Comm'n v. Brown,* 380 Md. 661, 667–68, 846 A.2d 428, 432 (2004), that a "[r]espondent's failure to properly maintain [a client's] settlement monies in his escrow account demonstrates his incompetence pursuant to Rule 1.1." We further concluded in *James* that a violation of MRPC 1.15 also constituted a violation of MRPC 8.4(a). *See id.,* at 663, 870 A.2d at 245, citing *Attorney Grievance Comm'n v. Gansler,* 377 Md. 656, 699, n. 22, 835 A.2d 548, 573, n. 22 (2003) and *Attorney Grievance Comm'n v. Gallagher,* 371 Md. 673, 710–11, 810 A.2d 996, 1018 (2002). We have long recognized that the failure to maintain settlement funds intact until disbursed—the comingling of personal and client funds—constitutes a violation of MRPC 8.4(d). *See Attorney Grievance Comm'n v. Drew,* 341 Md. 139, 669 A.2d 1344 (1996).

The posture of the case, then, is that the settlement check for $4,000 was deposited in respondent's operating account on September 18, 2002, after his associate, Ms. Wright, allegedly with permission, apparently signed both respondent's name and that of Ms. Lipscomb on the back of the check, as purported endorsers. Notwithstanding his admission to the contrary in his letter to Ms. Ridgell, we accept that respondent was unaware until at least late December that the check had been received and deposited. Under his own version, he was certainly aware, at least when he claimed to have deposited the check in January, that it was deposited to his operating account, not a trust account. It is also the case that, between the time the check was actually deposited in September and the time the $4,000 was paid to Ms. Lipscomb in mid-February, 2003, the balance in the operating account fell below $4,000 on a number of occasions. Ultimately, Ms. Lipscomb was paid the entire $4,000, so her only loss was that of the use of the funds for five months.

Relying on *Attorney Grievance v. Sperling,* 380 Md. 180, 844 A.2d 397 (2004), which involved an unintentional shortfall

in an attorney's trust account, Bar Counsel recommends an indefinite suspension, which was the sanction imposed in that case. If anything, this case is more egregious than *Sperling*, as respondent did not even use a trust account but co-mingled Ms. Lipscomb's funds in his operating account. Nonetheless, we believe that an indefinite suspension is the appropriate sanction.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST PETER RICHARD MAIGNAN.**

BELL, C.J., HARRELL and GREENE, JJ. dissent.

Dissenting Opinion by HARRELL, J., which BELL, C.J. and GREENE, J. join.

I dissent. The Majority opinion, in its parsing and re-weighing of the conflicting evidence before the hearing judge, ignores the appellate discipline we are supposed to exercise in our review of the fact-finding process in attorney discipline matters. Even if we would have found differently the operative facts based on the concededly conflicting evidence in this record, that is not our prerogative.

The hearing judge, in her written recommendation, characterized the conflicting evidence on the relevant points as follows:

The dispute in this matter surrounds the events after September 13, 2002. Mr. Maignan testified that, after speaking with Ms. Lipscomb, he called his associate, Ms. Tesheia Wright, and asked her to check the mail for the settlement proceeds, and then arrange for Ms. Lipscomb to come to the office to complete their transaction. He also asked Ms. Wright to make sure that the office manager, Ms. Sherri Boulet, prepared the deposit for the trust account and the disbursement to Ms. Lipscomb. Ms. Boulet was

responsible for opening office mail, maintaining records of all funds received and disbursed, and preparing bank deposits. Ms. Boulet left the firm in late September [of 2002], and Ms. Terri Anthony assumed her duties. Ms. Wright left the firm in early October [of 2002] on maternity leave and never returned.

The parties do not dispute that Respondent's office received the settlement check dated September 12, 2002, payable jointly to Ms. Lipscomb and Respondent (Petitioner's Exhibit 4), but do not agree on the date of receipt or deposit of that check. Petitioner contends that stamps on the reverse of the check, noting "Bank of America, NA" and "September 19, 2002," show that Respondent or his agent deposited the check on or about that date. Respondent disagrees. Ms. Anthony testified that she discovered the Lipscomb check under or behind a drawer in Ms. Boulet's desk when she cleaned it out in December 2002, and immediately notified Mr. Maignan. Mr. Maignan testified that he assumed that Ms. Wright had completed the transaction with Ms. Lipscomb in early October 2002, and was upset to learn differently from Ms. Anthony in December. However, when he examined the check, he realized that Ms. Wright had endorsed the check and signed the release on Ms. Lipscomb's behalf. Ms. Wright explained that Ms. Lipscomb authorized her to do so.

Ms. Lipscomb initially complained that Mr. Maignan failed to communicate with her between October and December 2002 regarding her settlement funds. However, she testified that she had several telephone conversations with his office staff during those months about unrelated matters, but that neither she nor anyone else mentioned the settlement.

Petitioner offers records of Respondent's bank accounts (Petitioner's Exhibit 14) to show days on which the available balance fell below the amount due Ms. Lipscomb, before she received her funds. However, the bank records do not evidence deposit of the settlement check until January 2003.

Mr. Maignan acknowledges that, by relying on electronic banking services and daily internet reviews of deposit, withdrawal and balance information, his understanding of the status of the firm's bank accounts differed from the monthly statements issued by the bank. Mr. Maignan testified that the bank's electronic records credit deposits when received by the bank, but that the monthly statement credits deposits on the date that the funds are actually deposited into the account. Mr. Maignan first learned of this difference from Petitioner's investigator in February 2003; as a result, he transferred the firm's accounts to a bank convenient to his office.

Respondent admits that he was alarmed by the belated discovery of Ms. Lipscomb's settlement proceeds, and directed Ms. Anthony to contact Ms. Lipscomb to arrange prompt delivery of her funds, either in the office or through the mail. Ms. Lipscomb testified that she remembered Ms. Anthony's call, admitting that she was mistaken when she complained that she knew nothing about the December discovery. Ms. Lipscomb further acknowledged that she asked Ms. Anthony to mail the check to her, because an office appointment would be inconvenient.

Mr. Maignan testified that he then executed a check from his general operating account to Ms. Lipscomb, and deposited the settlement check into that account. He concedes that his actions violate Rule 16–604, requiring that he deposit those funds into the trust account. However, he explained that he wanted to avoid any further delay in transferring the funds to Ms. Lipscomb, which would necessarily occur if he waited for the deposit to clear the trust account before disbursement.

However, Ms. Anthony inadvertently misaddressed the envelope, resulting in further delay. A call from Ms. Lipscomb alerted Ms. Anthony to her mistake, and Mr. Maignan directed Ms. Anthony to send another check immediately. Ms. Anthony testified that she disregarded that instruction and waited for the first letter to be returned by the Postal Service. Ms. Lipscomb finally received her check in early

February 2003, after initiating this complaint. She testified that she now considers the matter closed, and has no further concern about Mr. Maignan's representation or his handling of her funds.

Based on this factual record, the hearing judge drew the following factual conclusions:

Respondent concedes that he did not properly supervise his legal and administrate subordinates' handling of Ms. Lipscomb's settlement check. He assumed that his directions were carried out, and did not verify receipt or disbursement of Ms. Lipscomb's funds. Further, after discovering the misplaced check, he admits that he failed to deposit the funds into the trust account, as required.

However, the evidence does not establish that Mr. Maignan failed to communicate with Ms. Lipscomb. Ms. Lipscomb spoke with Mr. Maignan's employees several times during the relevant period, but neither she nor anyone else discussed the settlement funds. Further, scheduling conflicts prevented Ms. Lipscomb from meeting Mr. Maignan in his office. Once the settlement check was discovered, Ms. Lipscomb acknowledges that she simply forgot that she had spoken with Ms. Anthony about the circumstances, and called the office when she did not receive the check as expected. That call resulted in Ms. Anthony's discovery of the misaddressed mail. Thus, there was no lack of communications between Ms. Lipscomb and Mr. Maignan or other members of his office; rather, the failure to discuss the settlement proceeds resulted from Mr. Maignan's failure to supervise his subordinates properly.

Moreover, the evidence does not establish that Mr. Maignan misappropriated Ms. Lipscomb's funds for his own use. Mr. Maignan explained that he deposited the settlement check into his operating account to expedite the transfer to Ms. Lipscomb. Although Respondent's bank records show some discrepancies between electronic and paper records of balances, Ms. Lipscomb received her funds appropriately after their belated deposit. Thus, Respondent did not misappropriate his client's funds.

Judge Krauser concluded, as recommendations of law, that Respondent's contentions as to violations of Maryland Rules of Professional Conduct (MRPC) 1.1 and 1.3 were dismissed.[1,2] She then concluded that "Petitioner failed to establish that Respondent wrongfully misappropriated Ms. Lipscomb's funds to his own use or failed to communicate with her;" thus, Respondent did not violate MRPC 1.4, 1.5, 8.1, or 8.4; Maryland Rule 16–606 or 16–607; or Section 10–306 of the Md. Code, Business Occupations and Professions Article. Nonetheless, the hearing judge resolved that Respondent violated MRPC 1.15(a)[3] and 5.3(a) and (b),[4] as well as Maryland Rule 16–604, stating:

> Clear and convincing evidence, including Respondent's admissions, establishes that Respondent failed to supervise the handling of Ms. Lipscomb's settlement funds properly by his office staff, and failed to deposit those funds in his trust account. By failing to supervise the handling of Ms. Lipscomb's settlement funds, and failing to safeguard those funds, Respondent violated Rules 1.15 and 5.3 of the Maryland Rules of Professional Conduct. Further, Respondent

---

1. Because Respondent's conduct occurred prior to 1 July 2005, the effective date of the latest revision of the MRPC, the version of the MRPC in effect prior to 1 July 2005 is applicable to the present case.

2. The hearing judge's dismissal of the claimed MRPC 1.1 claim, to which Petitioner now excepts, was premised on her belief that Petitioner conceded that no such violation was proven by the evidence. The Majority opinion, at slip op. 3, maintains that the record does not support that such a concession was made by Petitioner. In any event, I would overrule Petitioner's exception in this regard, for the reasons stated in this Dissent.

3. The hearing judge did not specify which sub-sections of the rule as charged were violated by Respondent; however, it appears from her findings of fact and conclusions of law that she determined Respondent violated MRPC 1.15(a) only.

4. The hearing judge did not declare which sub-sections of the specific rule she determined had been violated; from her findings and conclusions, it appears she concluded that Respondent violated both MRPC 5.3(a) and (b).

violated Maryland Rule 16–604, by depositing Ms. Lipscomb's settlement check into his regular business account.

The Majority opinion in the present case, although paying brief lip service to the standards of appellate review of the hearing judge's fact-finding (Maj. slip op. at 5), rushes by the fuller context for those standards in its haste to replace her fact-finding with its own version.

We are supposed to accept a hearing judge's findings of fact unless we determine that they are clearly erroneous. *Attorney Grievance Comm'n v. Stolarz*, 379 Md. 387, 397, 842 A.2d 42, 47 (2004); *Attorney Grievance Comm'n v. Culver*, 371 Md. 265, 274, 808 A.2d 1251, 1256 (2002). This deference accorded to the hearing judge is due, in part, because the fact finder is in the best position to assess the demeanor-based credibility of a witness. *Stolarz*, 379 Md. at 398, 842 A.2d at 48; *Attorney Grievance Comm'n v. Sheridan*, 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999); *see also* Maryland Rule 16–759(b)(2)(B) ("The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."). The hearing judge is permitted to "pick and choose which evidence to rely upon" from a conflicting array when determining findings of fact. *Attorney Grievance Comm'n v. Fezell*, 361 Md. 234, 253, 760 A.2d 1108, 1118 (2000) (citation omitted).

In deciding whether the hearing judge's findings of fact are clearly erroneous where exceptions are filed, this Court looks first to Maryland Rule 16–759(b)(2)(B), which states that "the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b)." Under Maryland Rule 16–757(b), where exceptions to findings of fact are filed by Bar Counsel, we consider that Bar Counsel, before the hearing judge, "has the burden of proving the averments of the petition by clear and convincing evidence." *See also Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 681, 802 A.2d 1014, 1025 (2002) ("Clear and convincing evidence must be more than a mere preponderance but not beyond a reasonable doubt.") (internal quotations omitted) (citations omitted). Thus, where the exceptions are to findings made that were favorable to the

respondent attorney, under Maryland Rule 16–757(b), we consider also that the attorney "who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence." [5] *See also Garfield*, 369 Md. at 99, 797 A.2d at 765 (stating that "an attorney in a disciplinary proceeding need only establish factual matters in defense of an attorney's position by the preponderance of the evidence, including whether mitigating circumstances existed at the time of the alleged misconduct").

Applying these standards, and based on my review of the entire record, I would overrule Bar Counsel's exceptions and affirm the hearing judge's findings of fact and conclusions in the Lipscomb matter. Thus, Respondent would have violated only MRPC 1.15(a) and 5.3(a) and (b), as well as Maryland Rule 16–604.

Bar Counsel excepted to Judge Krauser's factual determination that "the bank records do not evidence deposit of the settlement check until January 2003." While Judge Krauser did not explicate specifically the basis for her factual finding in this regard, she did highlight the testimonial evidence offered by Respondent. Respondent presented his own testimony and that of Ms. Terri Anthony, a former office manager in his law firm. As the hearing judge noted, Ms. Anthony, who arrived

---

5. Maryland Rule 16–710(d) states: "Factual findings shall be supported by clear and convincing evidence." We have previously addressed the relationship of Maryland Rules 16–710(d) and 16–757(b):

    [t]he "clear and convincing" standard of Rule [16–710(d)] applies to the measure of proof imposed upon the Attorney Grievance Commission in factual determinations *essential to establishing its case against the attorney.* It does not apply to factual matters sought to be established by the attorney in defense of the attorney's position, including whether mitigating circumstances have been shown. As to this, the preponderance of the evidence standard is the applicable measure of proof.

    *Attorney Grievance Comm'n v. Garfield*, 369 Md. 85, 99 n. 13, 797 A.2d 757, 765 n. 13 (2002) (alteration in original) (quoting *Attorney Grievance Comm'n v. Bakas*, 322 Md. 603, 606, 589 A.2d 52, 53 (1991)) (citing *Attorney Grievance Comm'n v. James*, 355 Md. 465, 483, 735 A.2d 1027, 1037 (1999)).

on the scene shortly after the receipt of Ms. Lipscomb's settlement check in September 2002, testified that in December 2002 she discovered the check in a drawer in the former office manager's desk and immediately notified Respondent. Respondent testified that he was surprised to find that the check had not been deposited in September 2002 in accordance with his instructions to his office staff.[6]

In contrast, to demonstrate that Respondent or his agent deposited the check on or about 18 September 2002, Petitioner relied upon documentary evidence. This evidence included stamp markings on the reverse side of the settlement check stating "Bank of America, NA" and 19 September 2002. The date is found in three separate locations on the back of the check. Additionally, Petitioner introduced an affidavit from a representative of Respondent's bank who supplied copies of deposit slips and accompanying checks for two separate aggregate deposit transactions—$4,756.00 on 18 September 2002 and $4,060.00 on 6 January 2003. The affidavit indicates that

---

6. The Majority opinion, at slip op. 8-9, in its re-weighing of parts of the factual record favorable to Petitioner's case, seizes upon, as some sort of "gotcha," a 14 March 2003 letter that Maignan wrote to Bar Counsel in which Respondent stated "[o]n September 14, 2002, we advised Ms. Lipscomb that we had received the settlement check in this case and requested that she make an appointment to discuss the conclusion of the matter" and that "[d]ue to conflicts between Ms. Lipscomb's travel schedule and our trial calendar, no such meeting could be arranged before February 2003." This letter is utilized by the Majority as a smoking gun to suggest that Maignan was uncreditable when he testified that he was unaware until December 2002 that the check was in his office since 15 September 2002. Unfortunately, the letter does not function as the Majority views it. Maignan, in his defense, did not claim the check was not in his office until discovered in December. He conceded that the check from Ms. Lipscomb's landlord was received in September. His defense was that it was mislaid by staff after receipt and not rediscovered until December and thereafter deposited.

Apparently wishing to have it both ways, the Majority opinion, at slip op. 10, then elects to "accept" part of Respondent's testimonial evidence when it states that "[n]otwithstanding [Maignan's] admission to the contrary in his letter to [Bar Counsel], we accept that respondent was unaware until at least late December that the check had been received and deposited." This, to me, looks like an appellate "picking-and-choosing" in its exercise of appellate fact-finding, a prerogative denied to us by our own rules in such cases.

Ms. Lipscomb's $4,000.00 settlement check was included in the $4,756.00 deposit transaction on 18 September 2002. Petitioner corroborated this assertion with Respondent's own bank statement records for September 2002, which show an aggregate deposit on 18 September 2002 of $4,756.00, and January 2003, which show an aggregate deposit on 6 January 2003 of $4,060.00.

It is not for this Court to re-weigh the competing evidence, no matter its view as to the arguably more compelling nature of parts of the evidence had it been the fact-finder. Considering Respondent's preponderance of the evidence burden as set forth in Maryland Rule 16–757(b), I am unable to conclude that Judge Krauser's findings of fact with regard to the deposit date of the settlement check are clearly erroneous. She listened to the testimony and observed the demeanor of several witnesses, in addition, presumably, to reviewing the Petitioner's documentary evidence bearing on this point. As stated, *supra*, the hearing judge is allowed to choose from the competing evidence that upon which she or he elects to rely. Therefore, I would overrule this exception.

Predicated on having its factual exception to the deposit date of the settlement funds sustained, Petitioner also took exception to Judge Krauser's refusal to conclude specifically, in her finding of a violation of MRPC 1.15(a),[7] that Respondent misappropriated his client's funds and thus violated that component of the Rule, and MRPC 1.15(b) as well. With respect to MRPC 1.15(a), Petitioner requests this Court to conclude specifically that Respondent misappropriated Ms. Lipscomb's funds.[8] We have defined misappropriation as "any unautho-

---

7. Judge Krauser concluded that Respondent violated MRPC 1.15 because he "fail[ed] to safeguard" Ms. Lipscomb's settlement funds by not depositing the funds into a trust account; yet, she did not indicate explicitly which provision of MRPC 1.15 Respondent violated. As noted *supra*, it appears from the context of her findings of fact and conclusions of law that Judge Krauser determined that Respondent violated MRPC 1.15(a) only.

8. The word "misappropriation", as such, does not appear explicitly in the language of MRPC 1.15. We, however, have discerned violations

rized use by an attorney of [a] client's funds entrusted to him [or her], whether or not temporary or for personal gain or benefit." *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 481 (1996) (internal quotations omitted) (alterations in original) (citations omitted); *see also Attorney Grievance Comm'n v. Morehead,* 306 Md. 808, 817, 511 A.2d 520, 525 (1986) (stating that the attorney's use of "the funds of his client for his own benefit constitutes misappropriation"). To undermine Judge Krauser's conclusion of law that "Petitioner failed to establish that Respondent wrongfully misappropriated Ms. Lipscomb's funds to his own use," Petitioner relied upon its factual exception argument as to the deposit date of the settlement funds. Petitioner asserted that, because the settlement funds were deposited on or about 18 September 2002 in the law firm's general operating bank account, which is the bank account into which the parties agree the funds were deposited ultimately, Respondent misappropriated Ms. Lipscomb's funds when the account balance fell below $4,000.00, the amount of Ms. Lipscomb's settlement check, and even fell to a negative balance at some point before Ms. Lipscomb was paid. *See Attorney Grievance Comm'n v. Sperling,* 380 Md. 180, 192, 844 A.2d 397, 404–05 (2004) (noting that "a shortfall in an attorney's trust account ... places clients and others whose funds are being held at some considerable risk"); *Attorney Grievance Comm'n v. Bernstein,* 363 Md. 208, 229, 768 A.2d 607, 618 (2001) ("This Court, however, has stated that the rule against misappropriation is concerned with the risk of loss, not only the actual loss.") (internal quotations omitted) (citations omitted). Because, I would conclude *supra,* Judge Krauser's contrary finding of fact with regard to the deposit date of the settlement funds is not clearly erroneous, Respondent did not misappropriate Ms.

---

described as misappropriations in connection with MRPC 1.15 violations. *See, e.g., Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 481 (1996) ("In violating Rule 1.15 and Rule BU9, [which prohibits using funds required to be deposited in a trust account for any unauthorized purpose,] Respondent misappropriated client funds.").

Lipscomb's funds as the evidence does not reveal that the account balance fell below $4,000.00 after the date the hearing judge determined Respondent deposited the funds. Thus, this exception should be overruled, in my view.

Regarding MRPC 1.15(b), Petitioner argued that Respondent failed to promptly deliver the settlement payment, pointing to the delay between when Respondent's office received the funds in September 2002 and Ms. Lipscomb's receipt of the money in February 2003. Judge Krauser determined, however, that "the evidence d[id] not establish that [Respondent] failed to communicate with Ms. Lipscomb" regarding her settlement check, and that "scheduling conflicts prevented Ms. Lipscomb from meeting [Respondent] in his office" to transfer the settlement proceeds. Although we have stated, in the context of analyzing a MRPC 1.15(b) violation, that "[a] lawyer should hold settlement funds with the care of a professional fiduciary," at no time did Respondent fail to recognize Ms. Lipscomb's interest in the funds he possessed. *Stolarz,* 379 Md. at 400, 842 A.2d at 49 (citation omitted). The length of the delay (five months) in transmitting the proceeds to Ms. Lipscomb does not by itself necessarily yield a violation of MRPC 1.15(b). *See, e.g., Attorney Grievance Comm'n v. Mininsohn,* 380 Md. 536, 571, 846 A.2d 353, 374 (2004) (concluding a MRPC 1.15(b) violation where the attorney held the client's funds for over one year). Accordingly, Respondent did not fail to deliver promptly those funds in violation of MRPC 1.15(b). The exception ought to be overruled.

Finally, Petitioner excepted to Judge Krauser's determination that Respondent did not violate either MRPC 1.1 or 8.4(d). With regard to MRPC 1.1, even if we were to assume Petitioner did not dismiss the claim before the hearing judge, the evidence does not indicate that Respondent violated the competency obligation of MRPC 1.1. Additionally, there is nothing in the record to support a conclusion that Respondent "engage[d] in conduct that [wa]s prejudicial to the administration of justice" and thus violated MRPC 8.4(d). Consequently, these exceptions ought to be overruled as well.

As to the appropriate sanction, the Majority accepts Bar Counsel's recommended indefinite suspension. As noted, Judge Krauser gratuitously recommended a written reprimand. I would reject both suggestions.

For unintentional misappropriation that does not result in financial loss to the client, an indefinite suspension, with or without a temporal limitation on when re-admission may be sought, ordinarily is appropriate. *DiCicco,* 369 Md. at 687, 802 A.2d at 1028. In *DiCicco, supra,* we determined that an indefinite suspension with the right to reapply in ninety days was appropriate for violations of MRPC 1.15(a) and (c) and 8.4(a), as well as Maryland Rules 16–607(a) and 16–609. 369 Md. at 686, 688, 802 A.2d at 1027, 1028. With regard to the MRPC 1.15(a) violation, we noted the hearing judge's determination that DiCicco "on occasion, used [the escrow account] as if it also served as his personal bank account." *DiCicco,* 369 Md. at 676, 802 A.2d at 1022 (internal quotations omitted). No evidence substantiates a similar situation in Respondent's case. In light of Judge Krauser's factual finding of a December 2002 deposit date of the settlement check, which I would affirm, an indefinite suspension is inappropriate in the present case.[9]

For co-mingling of client and attorney funds, as was the case here, suspension from the practice of law for a finite period of time is appropriate.[10] Although we have stated that

---

**9.** Although we have sanctioned attorneys with indefinite suspensions, with the right to reapply after a specified period of time, for violations of MRPC 1.15, these results generally were administered in conjunction with a determination of misappropriation. *See, e.g., Attorney Grievance Comm'n v. Sperling,* 380 Md. 180, 844 A.2d 397 (2004); *Attorney Grievance Comm'n v. Seiden,* 373 Md. 409, 818 A.2d 1108 (2003); *Attorney Grievance Comm'n v. Culver,* 371 Md. 265, 808 A.2d 1251 (2002); *Attorney Grievance Comm'n v. DiCicco,* 369 Md. 662, 802 A.2d 1014 (2002).

**10.** As Judge Wilner noted in dissent in *Bernstein,* however, co-mingling does not insulate attorneys necessarily from being found to have engaged in misappropriation. He stated:

The co-mingling of client and attorney funds always creates the potential for misappropriation, even when there is no intent to

"every attorney is deemed to know the Rules of Professional Conduct and is charged with the knowledge of how to operate and maintain a trust account," a finite suspension is in accordance with the nature and gravity of the violations and intent involved in Respondent's circumstances, and aligns with our recent treatment of analogous cases. *Bernstein*, 363 Md. at 228, 768 A.2d at 618; *see also Attorney Grievance Comm'n v. Seiden*, 373 Md. 409, 422, 818 A.2d 1108, 1115 (2003) ("The nature and gravity of the violations and the intent with which they were committed is relevant to the sanctioning process.") (internal quotations omitted) (citation omitted).

In *Attorney Grievance Commission v. Adams*, 349 Md. 86, 89–90, 706 A.2d 1080, 1081–82 (1998), the attorney violated both MRPC 1.15(a) and Maryland Rule 16–604. The attorney tendered a check drawn from his law firm's operating account to pay to the Comptroller of the Treasury the client's negotiated tax delinquency settlement of $2,000.00. *Adams*, 349 Md. at 91, 706 A.2d at 1082. The client pledged to provide immediately a check that would be deposited in the operating account to cover the client's obligation. *Id.* Before the client provided the attorney the funds to cover the attorney's check to the Comptroller, the attorney's check was returned on two separate occasions due to a lack of funds in the attorney's operating account. *Id.* Although the client eventually presented a check to the attorney for $1,900.00, the operating account nonetheless lacked sufficient funds to cover the obligation due to an overdraft balance which pre-existed the dishonored check tendered to the Comptroller. *Adams*, 349 Md. at 92, 706 A.2d at 1082–83.

Under Maryland Rule 16–604, we determined that the client's payment of $1,900.00 could not be considered a repay-

---

misappropriate. A misappropriation necessarily occurs whenever the attorney withdraws funds from a co-mingled account for his or her own purpose and, as a result, leaves the account insufficient to cover all client funds, and such a misappropriation is never innocent. It is not necessarily willful, however, or for the conscious purpose of unlawfully taking funds held in trust for another.
*Bernstein*, 363 Md. at 231, 768 A.2d at 619–20 (Wilner, J., dissenting).

ment for an advanced expense, and thus failed to qualify for exemption under the rule as being deposited into a trust account or forwarded directly to a third party, as the attorney "could not loan what he did not have." *Adams*, 349 Md. at 95, 706 A.2d at 1084. Because the attorney neither deposited the funds into a trust account nor forwarded the money to the Comptroller, he violated Maryland Rule 16–604. *Adams*, 349 Md. at 95–96, 706 A.2d at 1084–85. We also sustained the hearing court's conclusion of a MRPC 1.15(a) violation because we concluded that the initial payment was actually the client's own funds, *supra*, which should have been delivered by the attorney to the Comptroller, and thus could not be considered a repayment as the attorney argued. *Adams*, 349 Md. at 96, 706 A.2d at 1085. As a result, the attorney was required to safeguard the funds under MRPC 1.15(a). *Id.* In determining the appropriate sanction, we considered as factors that: (a) the attorney unintentionally mishandled the client's funds; (b) the attorney had no other disciplinary violations; (c) the attorney acted with good intention; and, (d) the attorney eventually paid the Comptroller with the money the client gave to him. *Adams*, 349 Md. at 98–99, 706 A.2d at 1086. Ultimately, we deemed that an appropriate sanction was a thirty-day suspension from the practice of law, together with a requirement that Adams' conduct with regard to his operating and trust accounts be supervised by another attorney for one year, at Adams' expense. *Adams*, 349 Md. at 99, 706 A.2d at 1086.

In *Attorney Grievance Commission v. McClain*, 373 Md. 196, 212, 817 A.2d 218, 228 (2003), the attorney was found to have violated MRPC 1.15 by failing to retain in escrow the entire amount given to him by a successful bidder at a foreclosure sale. He also violated Maryland Rule 16–606 by failing to properly name and designate an escrow account as an attorney trust account. *Id.* The hearing court rejected McClain's dual explanations that he withdrew the money under a belief that he had sufficient funds on hand from prior unclaimed fees or that he was entitled to the withdrawn portion as payment for services rendered. *McClain*, 373 Md.

at 205, 817 A.2d at 224. In assessing the appropriate sanction, we considered: (a) the lack of evidence establishing willful or conscious violations; (b) that the violations were corrected shortly after the attorney was made aware of the problems; (c) the attorney took a course in escrow management following the violations; and, (d) the lack of prior disciplinary proceedings against the attorney. *McClain*, 373 Md. at 212, 817 A.2d at 228. Consequently, we determined that a thirty-day suspension was apposite. *Id.*

*Adams* and *McClain* guide my consideration of the appropriate sanction here. The conduct of Respondent was sloppy and negligent, but not willful or intentional. This was Respondent's first involvement with the attorney disciplinary process. Respondent deposited the settlement check into the firm's business operating account, which Judge Krauser correctly concluded was a violation of Maryland Rule 16–604, in an effort to remit more expeditiously the money to Ms. Lipscomb. Ms. Lipscomb received the entire amount of settlement funds due her. The likelihood of repeating the violative conduct also is an important factor in determining an appropriate sanction. *Seiden*, 373 Md. at 422, 818 A.2d at 1116 (citation omitted). Judge Krauser noted in her written recommendation that Respondent took several remedial actions to improve the operations of his law firm. Specifically, Judge Krauser found the following facts that she apparently anticipated might be of aid to this Court in considering a sanction:

> In late 2002, on the advice of his accountant, he purchased a new office management system, including a training program from himself and his office manager, to record the receipt and disbursement of all funds, correlate retainer agreements with billing, and document trust account transactions. He now prepares written retainer agreements for every client and service, whether for contingent or fixed fee arrangements, for use in the new system. He has improved the office's record keeping system, to provide ready access to retainer agreements and to separate wordprocessing functions from financial transactions.

In the past three years, Respondent has participated in several courses for Maryland attorneys, and others offered by the District of Columbia and Federal Bar Associations, regarding ethics, office practice management, and management of escrow accounts. Upon learning of the hazards of electronic banking in February 2003, Respondent transferred the firm's banking business to a bank with which he conducts transactions personally.

In sum, Respondent recognized his weakness in office management almost immediately, and spent considerable time and money to improve his ability to supervise and manage his firm within the first year of its existence. Petitioner does not dispute that these improvements have prevented any recurrence of the errors committed, and should prevent such errors in the future.

I would impose a thirty-day suspension from the practice of law as the proper sanction for Respondent's violations.

Chief Judge BELL and Judge GREENE authorize me to state that they join in this dissent.